THOMAS D. WILLIAMS, PLAINTIFF, *v.* JOHN C. MONT-
GOMERY, DEFENDANT.

*Boundary line—establishment of, by oral agreement—when conclusive.*

In this action, which involved the determination of the true line between adjoin-
ing owners, evidence was given by plaintiff tending to show that, in 1846 or
1847, the line between the respective grantors of the present parties was
uncertain and in dispute; that such grantors orally agreed upon the location
of the line, and to erect a division fence on such line; that they afterwards
did erect such fence, and severally entered into possession and occupied
up to such line and acquiesced in such location for a reasonable length
of time, and until the parties to this action bought and went into possession.
*Held*, that these facts, if proved, rendered the line so established the boundary
line between the parties, even as against the true line, though the true line
could, at the time of the trial of this action, be determined with certainty.

MOTION for a new trial, on exceptions ordered to be heard, in
the first intance, at the General Term, after a verdict in favor of
defendant. The action was in ejectment to recover about $6\frac{33}{100}$
acres of land. The decision of the case turned upon the true
boundary line between the lots of the respective parties.

*I. H. Maynard*, for the plaintiff.

*Wm. Gleason*, for the defendant.

BOARDMAN, J.:

These parties were and are adjoining owners of lands. It is
claimed, and the evidence tends to show, that the boundary line
between their grantors was doubtful, uncertain, and in dispute;
that such grantors of the parties settled and fixed upon a bound-
ary line between them; that they built a fence thereon and sever-
ally occupied up to such line for a considerable length of time,
and until after the parties to this action became the purchasers
thereof. By the paper title, plaintiff's land was wholly on divi-
sion sixty-four, while defendant's land was wholly on division
sixty-three, and the boundary line between these divisions was
the true boundary line between their farms, and the one about
which so much evidence was given on the trial.

Under the facts, as they are claimed to exist, the plaintiff insisted that a line had been fixed and agreed upon between the respective grantors of the parties, which was final and conclusive upon them and their privies in estate. The court was, therefore, requested by the plaintiff to hold and to charge, in substance, that if the line between the respective grantors was uncertain and in dispute in 1846 or 1847, and such grantors did then orally agree where the line should be, and that they would erect a division fence between them on the line so agreed upon, and afterwards did erect such fence, and severally entered into possession and occupied up to that line and maintained such division fence, and acquiesced in such location for a reasonable length of time, and until after plaintiff bought and went into possession, such line became the boundary between such grantors and the parties to this action, and all are bound by its location. The judge declined so to charge, and instead said to the jury, in substance, that if the boundary line was uncertain in 1847, and had since continued to be uncertain, and the jury cannot say from the evidence where the true line is to be found now, the jury may, in its discretion, adopt the line so agreed upon in 1846–7. The judge adds: "I say you may adopt it as a legal proposition, but I do not charge you that you are bound to adopt it. I say you may have a choice in your discretion, if the case is such that you cannot determine from all the evidence where the true line is." The plaintiff excepted, to the refusal to charge as requested, and to the charge as made. These exceptions constitute the principal subjects for review.

In both respects we think the learned judge erred. The law seems to be well settled that adjoining owners, under the facts claimed to exist in this case, may fix, settle and agree. upon a division line between them which shall be binding upon them and their grantees, if occupied and possessed by them up to such line, and acquiesced in for a reasonable time thereafter. The following cases lay down or illustrate this rule. (*Vosburgh* v. *Teator*, 32 N. Y., 561; *Adams* v. *Rockwell*, 16 Wend., 285, and note; *Ambler* v. *Cox*, 13 Hun, 295.) No doubt seems to have been entertained that the true line was, and still is, in doubt, because the burden of the testimony related to that subject. The defend-

ant now contends against the sufficiency of the evidence of an uncertain or disputed boundary to justify such a claim. He also denies that the evidence is sufficient to warrant the jury in finding a location of this line by the agreement of the parties. The charge of the judge, however, recognizes the existence of evidence of both facts, and submits it for the consideration of the jury. While there was thus enough evidence to submit to the jury, it was important that it should be correctly presented. The court refused to charge the law as it is believed to be. It was also error to charge, in substance, that if the jury can from the evidence find where the true line is at the time of the trial, then the agreement of the grantors of these parties, whatever it may have been, is of no consequence, and is not binding. On the contrary, we suppose a valid agreement fixing the boundary line would become absolutely binding, even against the true line, if at some future time it could be found with certainty. There is some confusion in the language of the charge due, it is feared, to bad reporting. Still, it is apparent that the judge insists upon the jury finding the true line, if it can be done, and that such true line, when found, shall control their verdict. This did not give fair effect to the evidence relating to the doubtful boundary line, and the agreement to settle it. We do not say the boundary line between divisions sixty-three and sixty-four was doubtful, uncertain, or in dispute in 1846, or at any time since. That was a question to be determined by the jury. So, too, of the agreement to fix the boundary. If it shall be found that there never was any uncertainty as to the line; that there never was any agreement to fix it by parol, of a nature to bind the parties, then the true line between sixty-three and sixty-four will control the respective rights. We cannot consider these questions of facts upon exceptions, but it is not probable that the case is so barren of evidence as to take them away from the jury. It is a subject of regret that a case, which has already involved so much labor and expense in comparison with the amount involved, should be sent back for a new trial. Continued litigation must be ruinous to the parties. But the error is one which may have, and very likely did control the action of the jury. The case may have been properly decided by the jury; the result may be right; but we cannot overlook the possible wrong which

may have been done plaintiff by substantially ignoring his claim of title, founded on the alleged agreement of Downs & Teed.

For the reasons stated a new trial must be granted, with cos s to abide the event.

LEARNED, P. J., and WESTBROOK, J., concurred.

New trial granted; costs to abide event.